Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Tel: (212) 318-3000
Fax: (212) 318-3400
felice.galant@nortonrosefulbright.com

OF COUNSEL:
Matthew H. Kirtland (pending *pro hac vice* motion)
NORTON ROSE FULBRIGHT US LLP
799 9 Street NW, Suite 1000
Washington, D.C. 20001
Tel.: (202) 662-0200
Fax: (212) 662-4643
matthew.kirtland@nortonrosefulbright.com

*Attorneys for Third-Party Republic of Kazakhstan*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANATOLIE STATI** *et al.*, <br><br> **Petitioners,** <br><br> v. <br><br> **BANK OF NEW YORK MELLON CORPORATION,** <br><br> **Respondent.** | **Civ. No. 1:14-mc-00425-VSB** <br><br> **NOTICE OF MOTION** |

PLEASE TAKE NOTICE that, upon the *Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 filed herein; the declaration of Alexander Foerster, dated October 23, 2017; the Declaration of Matthew H. Kirtland, dated October 23, 2017; and the accompanying Memorandum of Law in Support of the Republic of Kazakhstan's ("Kazakhstan") Motion to Intervene and Motion to Quash Subpoenas Served on Bank of New York Mellon Corporation, Kazakhstan will move this Court before the Hon. Vernon S. Broderick

- 2 -

at the United States Courthouse located at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007, on a date and time to be set by the Court or as soon thereafter as counsel may be heard, for an Order (1) granting Kazakhstan's motion to intervene; (2) quashing all subpoenas served by the Stati Parties on the Bank of New York Mellon Corporation on the grounds that the subpoenas are improper under 28 U.S.C. § 1782 and/or were not authorized by the Court's December 30, 2014 Order (ECF 5) (the "Order"); and (3) vacating the Order.

DATED:  October 23, 2017                                    Respectfully submitted,

                                                                                              */s/ Felice B. Galant*
                                                                                              _____
                                                                                              Felice B. Galant

                                                                                              NORTON ROSE FULBRIGHT US LLP
                                                                                              1301 Avenue of the Americas
                                                                                              New York, New York 10019-6022
                                                                                              Tel:  (212) 318-3000
                                                                                              Fax: (212) 318-3400
                                                                                              felice.galant@nortonrosefulbright.com

                                                                                              *Attorney for Third-Party Republic of Kazakhstan*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the Notice of Motion; the declaration of Alexander Foerster, dated October 23, 2017; the Declaration of Matthew H. Kirtland, dated October 23, 2017, together with the exhibits thereto, and the accompanying Memorandum of Law in Support of the Republic of Kazakhstan's Motion to Intervene and Motion to Quash Subpoenas Served on Bank of New York Mellon Corporation were served (i) via the Court's ECF system on October 23, 2017 upon counsel of record for Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd and (ii) by electronic mail and first-class mail on Jessica W. Rhea, Counsel, Litigation, BNY Mellon, Legal Department, 500 Grant Street, Pittsburgh, PA 15258-0001, Jessica.Rhea@bnymellon.com.

Dated: October 23, 2017

                                              */s/ Felice B. Galant*
                                              _____
                                              Felice B. Galant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANATOLIE STATI *et al.*, <br><br> Petitioners, <br><br> v. <br><br> BANK OF NEW YORK MELLON CORPORATION, <br><br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civ. No. 1:14-mc-00425-VSB |

**REPUBLIC OF KAZAKHSTAN'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO QUASH SUBPOENAS SERVED ON <u>BANK OF NEW YORK MELLON</u>**

NORTON ROSE FULBRIGHT US LLP
Attorneys for Third-Party Republic of Kazakhstan
1301 Avenue of the Americas
New York, New York 10019-6022
Tel: (212) 318-3000

OF COUNSEL:

Felice B. Galant

-and-

Matthew H. Kirtland (pending *pro hac vice* motion)
NORTON ROSE FULBRIGHT US LLP
799 9 Street NW, Suite 1000
Washington, D.C. 20001
Tel.: (202) 662-0200
Fax: (212) 662-4643

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES………………………………………………………………..…...ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 3

    I.    THE SCC AWARD AND THE PROCEEDINGS BEFORE THE SVEA COURT OF APPEAL AND SWEDISH SUPREME COURT ............................. 3

    II.    THE STATI PARTIES ATTEMPT TO ENFORCE THE SCC AWARD IN THE UNITED KINGDOM ................................................................................ 4

    III.    THE STATI PARTIES SERVE SUBPOENAS ON BNY MELLON ................... 5

MOTION TO INTERVENE .......................................................................................................... 6

    I.    KAZAKHSTAN IS ENTITLED TO INTERVENE AS OF RIGHT TO QUASH THE SUBPOENA .................................................................................. 6

    II.    IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT KAZAKHSTAN PERMISSIVE INTERVENTION ................................................................................................... 8

MOTION TO QUASH ................................................................................................................... 9

    I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE STATI PARTIES ARE NOT SEEKING DISCOVERY IN AID OF ADJUDICATIVE FOREIGN LEGAL PROCEEDINGS ................................... 10

    II.    THE 2017 SUBPOENA SHOULD BE QUASHED BECAUSE THE COURT DID NOT AUTHORIZE ITS ISSUANCE ........................................... 11

    III.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE CIRCUMSTANCES CONCERNING ENFORCEMENT OF THE AWARD IN THE UNITED KINGDOM HAVE CHANGED Materially SINCE THE COURT'S ORDER ISSUED......................................................... 12

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
    262 F.R.D. 348 (S.D.N.Y. 2009) ................................................................................................6

*Euromepa S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d Cir. 1998) ...........................................................................................9, 10, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................................................................9

*Jiangsu Steamship Co. Ltd. v. Success Superior Ltd.*,
    2015 WL 3439220 (S.D.N.Y. Jan. 6, 2015) ...........................................................................10

*Kamdem-Ouaffo v. PepisCo, Inc.*,
    314 F.R.D. 130 (S.D.N.Y. 2016) .............................................................................................6

*In re MT "Baltic Soul" Produktentankschiffffhartgesellschaft Mgh & Co. Kg.*,
    2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ..........................................................................10

*Sackman v. Liggett Group, Inc.*,
    167 F.R.D. 6 (E.D.N.Y. 1996) .................................................................................................8

*In re Sarrio, S.A.*,
    119 F.3d 143 (2d Cir. 1997) .....................................................................................................7

*United States Postal Service v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) .....................................................................................................8

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) .........................................................................................................7

**Rules and Statutes**

28 U.S.C. § 1782 ....................................................................................................1, 3, 9, 10, 11

Federal Rule of Civil Procedure 24 .........................................................................................6, 8

## INTRODUCTION

The Stati Parties[1] filed this action on December 22, 2014 to obtain third-party discovery from Bank of New York Mellon Corporation ("BNY Mellon") in aid of foreign legal proceedings pursuant to 28 U.S.C. § 1782. *See Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (ECF 1) ("Petition" or "Pet."). Specifically, the Petition sought discovery from BNY Mellon regarding the Republic of Kazakhstan's ("Kazakhstan's") assets in the United Kingdom to assist with their attempt to attach and execute those assets in that jurisdiction in satisfaction of an international arbitral award (the "SCC Award" or the "Award") issued in Stockholm, Sweden by the Stockholm Chamber of Commerce (the "SCC"). Pet. ¶¶ 1-4. The Petition attached as Appendix A subpoenas for documents and deposition testimony that the Stati Parties sought to serve on BNY Mellon which requested the production of documents and information regarding Kazakhstan's assets in the United Kingdom. *See id.*, App. A.

At the time the Petition was filed in December 2014, the Stati Parties represented to the Court that they had obtained (but not yet served on Kazakhstan) an *ex parte* order permitting them to enforce the SCC Award in the United Kingdom in the same manner as a judgment (the "Enforcement Order"). *Id*. ¶¶ 4, 6. Thus, the Petition sought discovery to "assist [the Stati Parties] in executing the Enforcement Order" in the United Kingdom. *Id.*; *see also id.* ¶ 14(b) & 17. The Petition ***did not*** seek discovery to aid in the merits of those proceedings (the "London Enforcement Proceedings") or proceedings pending in any other jursidiction. *See generally id.*

On December 30, 2014, the Court authorized the Stati Parties to serve the subpoenas that were annexed to the Petition. *See* Order (ECF 5) (the "Order"). Kazakhstan understands that the

---

[1] Petitioners are Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. ("Petitioners" or the "Stati Parties").

1

Stati Parties served the subpoenas on December 31, 2014, but BNY Mellon never produced documents or testimony in response.

More than two and a half years passed. Then, earlier this month, the Stati Parties served a new subpoena for documents on BNY Mellon, purportedly pursuant the Court's December 30, 2014 Order (the "2017 subpoena"). The 2017 subpoena was not modeled after the subpoenas that the Court authorized the Stati Parties to serve. Instead, the 2017 subpoena broadly seeks "[a]ll documents evidencing or concerning electronic transfers to or from the ROK," regardless of jurisdiction. Kazakhstan understands that BNY Mellon has not yet produced documents in response to this newly-issued subpoena.

The circumstances regarding the validity and enforcement of the SCC Award have changed materially since the Court's Order issued on December 30, 2014. In the London Enforcement Proceedings, the Stati Parties served the Execution Order on Kazakhstan after the Court's Order issued and Kazakhstan presented its defenses to enforcement of the SCC Award. Based on evidence and information obtained by Kazakhstan beginning in June 2015 (after the Stati Parties filed their Petition), Kazakhstan's defenses in the London Enforcement Proceedings include that the Stati Parties obtained the Award by fraud. On June 6, 2017, the London Court held that Kazakhstan demonstrated a *prima facie* case that the Stati Parties obtained the SCC Award by fraud, and that the interest of justice required that Kazakhstan's fraud allegations be "examined at trial and decided on the merits." Kirtland Decl. Ex. 1, ¶¶ 37, 92-93. This trial is set to commence circa October 2018. Kirtland Decl. ¶ 9.[2]

---

[2] The Stati Parties filed enforcement proceedings in the United States District Court for the District of Columbia on September 30, 2014 — the "Washington Enforcement Proceedings." Kirtland Decl. ¶ 10. The Washington Enforcement Proceedings have been stayed since August 2016, first pending the outcome of the set-aside proceedings before the Svea Court of Appeal, and subsequently pending the conclusion of the proceedings before the Swedish Supreme Court. *See id.* ¶ 13. Kazakhstan also has attempted to assert a fraud defense to enforcement of the SCC Award in the Washington Enforcement Proceedings. *See id.* ¶¶ 11-12.

2

Kazakhstan now seeks to quash the subpoenas issued served by the Stati Parties on BNY Mellon for three reasons. First, pursuant to well-established Second Circuit authority, § 1782 *may not* be used to obtain discovery in aid of the attachment and execution of a foreign judgment — which is the Stati Parties' only proffered reason for seeking the discovery at issue. *See* Pet. ¶ 4 ("This petition seeks discovery concerning the ROK's assets in the United Kingdom, as such information will assist Petitioners in executing the Enforcement Order."). Second, the 2017 subpoena should be quashed because the Court's Order did not authorize the Stati Parties to serve it. Third, the circumstances concerning enforcement of the SCC Award have changed materially since the Court's Order issued. Accordingly, the Court's Order should be vacated, and all of the subpoenas served on BNY Mellon pursuant to that Order should be quashed.

## FACTUAL BACKGROUND

### I. THE SCC AWARD AND THE PROCEEDINGS BEFORE THE SVEA COURT OF APPEAL AND SWEDISH SUPREME COURT

On December 19, 2013, an arbitral tribunal issued a nearly $500 million international arbitral award in favor of Petitioners and against Kazakhstan following an arbitration (the "SCC Arbitration") conducted under the Energy Charter Treaty. Kirtland Decl. ¶ 2; *see also* Pet. ¶ 2.

Kazakhstan has challenged the SCC Award in the Swedish court system. In March 2014, Kazakhstan initiated a proceeding to set-aside the SCC Award in the Svea Court of Appeal. Foerster Decl. ¶ 5. Over one year later, in summer 2015, Kazakhstan obtained third-party discovery in the United States pursuant a 28 U.S.C. § 1782 proceeding filed in this Court. Kirtland Decl. ¶¶ 5-6; *see also In Re Ex Parte Application of Petitioner Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, No. 1:15-mc-00081-P1 (S.D.N.Y.), Opinion & Order (ECF 21) (6/22/2015). Through documents obtained pursuant to that proceeding and other information, Kazakhstan began to unravel a fraudulent

3

scheme carried out by the Stati Parties to artificially inflate the costs associated with one of the key assets at issue in SCC Arbitration, a liquefied petroleum gas plant (the "LPG Plant").  *Id.* ¶ 6.  On October 5, 2015, Kazakhstan filed a new statement of claim with the Svea Court of Appeal seeking to invalidate the SCC Award on that basis of this alleged fraud by the Stati Parties.  Foerster Decl. ¶ 6.

The Svea Court of Appeal, applying Swedish law and Swedish public policy, ultimately denied Kazakhstan's application to set-aside the Award on December 9, 2016.  *Id.*  Kazakhstan subsequently filed a motion to quash the Svea Court of Appeal's judgment due to a grave procedural error in the Swedish Supreme Court on February 3, 2017.  *Id.* ¶ 8.  The motion to quash is currently pending before the Swedish Supreme Court.  *Id.*  If the motion is granted, the case will be remanded to the Svea Court of Appeal for a re-trial on all (or some) issues.  *Id.* ¶ 10.  Thus, the Award ultimately could be annulled in Sweden.  *Id.*  A decision from the Swedish Supreme Court is expected within the next two weeks.  *Id.* ¶ 8.

**II.     THE STATI PARTIES ATTEMPT TO ENFORCE THE SCC AWARD IN THE UNITED KINGDOM**

On February 24, 2014, the Stati Parties instituted proceedings to enforce the Award in the High Court of Justice, Queen's Bench Division, Commercial Court in London, United Kingdom — the London Enforcement Proceedings.  *See* Kirtland Decl. ¶ 4.

Under the English law, a party files an *ex parte* application for enforcement of an international arbitral award and the court ordinarily grants such application.  The court's order is then served on the opposing party and if defenses are presented, enforcement of the order granting the *ex parte* application is typically stayed pending the court's resolution of such defenses.  *Id.* ¶ 3.

On February 28, 2014, the London Court granted the Stati Parties' *ex parte* application. *See id.* ¶ 4; *see also* Kirtland Decl. Ex. 1, Approved Judgment, High Court of Justice, Queen's Bench Division, Commercial Court, Case No. CL-214-000070 (6/6/2017) ("London Judgment"), ¶ 3. On April 7, 2015 — after the Stati Parties filed their Petition in this case — Kazakhstan filed an application to annul and/or set-aside the *ex parte* Enforcement Order. Kirtland Decl. ¶ 5.

In August 2015, after Kazakhstan obtained certain documents and information concerning the Stati Parties' alleged fraud, Kazakhstan applied to amend its application to set aside the London Court's *ex parte* enforcement order to add the contention that enforcement of the SCC Award would contravene English public policy because the Award was obtained by reason of the Stati Parties' fraud. *Id.* ¶ 8.

In January 2017, following the Svea Court of Appeal's December 9, 2016 decision, Kazakhstan submitted extensive witness evidence, documents, and legal submissions to the London Court in support of its fraud defense. *Id.* ¶ 9. A hearing was held on February 6-7, 2017, in which the Stati Parties fully participated. *Id.*

On June 6, 2017, the London Court held that Kazakhstan demonstrated a *prima facie* case that the Stati Parties obtained the SCC Award by fraud, and that the interest of justice required that Kazakhstan's fraud allegations be "examined at trial and decided on the merits." Kirtland Decl. Ex. 1, ¶¶ 37, 92-93. The London Court expressly rejected the Stati Parties' argument that the alleged fraud did not affect the SCC Tribunal's ruling on the SCC Award. *Id.* ¶¶ 38-49. A trial on Kazakhstan's fraud case is set to commence circa October 2018. Kirtland Decl. ¶ 9.

### III.  THE STATI PARTIES SERVE SUBPOENAS ON BNY MELLON

The Court authorized the Stati Parties to serve discovery on BNY Mellon on December 30, 2014. *See* ECF 5. Specifically, the Court authorized the Stati Parties to serve the subpoenas attached as Appendix A to the Petition. *Id.* Those subpoenas sought documents and testimony

5

concerning Kazakhstan's assets in the United Kingdom, in aid of the London Enforcement Proceedings. Pet., App. A. Kazakhstan understands that the Stati Parties served subpoenas on BNY Mellon shortly after the Court's Order issued. Kirtland Decl. ¶ 14. Kazakhstan further understands that BNY Mellon ultimately did not produce documents or testimony in response to those subpoenas. *Id.* In 2017, the Stati Parties served a new subpoena on BNY Mellon. *Id.* ¶ 15; *see also* Kirtland Decl. Ex. 9, 2017 Subpoena. The 2017 subpoena broadly seeks "[a]ll documents evidencing or concerning electronic transfers to or from the ROK," regardless of jurisdiction. Kirtland Decl. Ex. 9. Kazakhstan understands that BNY Mellon has not yet produced documents in response to this newly-issued subpoena. Kirtland Decl. ¶ 15.

## MOTION TO INTERVENE

Federal Rule of Civil Procedure 24 permits a party to intervene in ongoing litigation as of right or by permission of the court. The movant bears the burden that it meets the requirements for intervention. *Kamdem-Ouaffo v. PepisCo, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016). Courts accept as true the non-conclusory allegations asserted in the intervening party's motion. *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009).

### I. KAZAKHSTAN IS ENTITLED TO INTERVENE AS OF RIGHT TO QUASH THE SUBPOENA

A party is granted an automatic right to intervene under Federal Rule of Civil Procedure 24(a) when four requirements are satisfied: (1) the application is timely; (2) the application has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may practically impair the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Kamdem-Ouaffo,* 314 F.R.D. at 134 (citation omitted). Kazakhstan meets all four requirements.

First, the motion is timely. *See United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994) (timeliness factors include "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties from any delay; (3) prejudice to the application if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."). Kazakhstan understands that BNY Mellon has not produced documents or testimony in response to any of the subpoenas served by the Stati Parties. Kirtland Decl. ¶¶ 14-15. Further, Kazakhstan understands that the 2017 subpoena was served just recently, within a number of days. *Id.* ¶ 15. Thus, Kazakhstan has only recently learned of the Stati Parties' attempt to move forward with enforcement of the subpoenas. Further, there is no risk of prejudice to the Stati Parties from any delay resulting from Kazakhstan's intervention, given that the Stati Parties are seeking discovery in aid of attachment and execution proceedings that will not occur before October 2018 (assuming they occur at all). *Id.* ¶ 9. Moreover, Kazakhstan would be severely prejudiced if its motion is denied, given that its confidential financial information is the subject of the subpoenas.

The second and third factors also are met here. Kazakhstan has a clear interest in the documents and information that have been requested by the Stati Parties — its interest in protecting the disclosure of its confidential financial information from an adversary in multiple proceedings pending worldwide — and the disposition of this action may practically impair Kazakhstan's ability to protect its interest in that information. *See In re Sarrio, S.A.,* 119 F.3d 143, 148 (2d Cir. 1997) (in connection with 28 U.S.C. § 1782 subpoena served on bank, holding that "parties against whom requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties").

Fourth, Kazakhstan's interests in this matter are not adequately protected by BNY Mellon. "The most important factor in determining the adequacy of the representation is how the interest of the absentee compares with the interest of the present parties." Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1909. The burden of making this showing is "minimal." *Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996). Here, Kazakhstan's interest in protecting the disclosure of its confidential financial information from the Stati Parties is not adequately represented by BNY Mellon. Kazakhstan understands that BNY Mellon intends to respond to the subpoena unless Kazakhstan files the instant motion. Kirtland Decl. ¶ 15.

## II. IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT KAZAKHSTAN PERMISSIVE INTERVENTION

In the alternative, the Court should exercise its "broad" discretion to grant Kazakhstan permissive intervention. *See United States Postal Service v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978) ("Permissive intervention is wholly discretionary with the trial court."). Federal Rule of Civil Procedure 24(b) permits permissive intervention "[o]n timely motion" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." The "principal consideration" is "whether the intervention will unduly delay or prejudice the rights of the original parties," with other relevant factors being the "nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether the parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Brennan*, 579 F.2d at 191-92 (quotations omitted).

Here, intervention will not unduly delay or prejudice the rights of the parties. As previously stated, BNY Mellon has not yet responded to the subpoenas. Kirtland Decl. ¶¶ 14-15. Further, the Stati Parties have sought the discovery to aid in proceedings that will not occur until at least

8

October 2018 (if at all). *Id.* ¶ 9. Further, given Kazakhstan's strong interest in protecting the disclosure of its confidential financial information from an adversary in multiple proceedings pending worldwide, BNY Mellon's forthcoming compliance with the 2017 subpoena, and Kazakhstan's ability to fully present the factual background regarding the present status of the London Enforcement Proceedings, the Court should exercise its discretion to allow Kazakhstan to intervene in this matter.

## MOTION TO QUASH

Section 1782 provides that "the district court … may order … [discovery] for use in a proceeding in a foreign or international tribunal." The Second Circuit has held that a three part test must be met for discovery to be issued pursuant to § 1782: "(1) that the person from whom the discovery is sought reside (or be found) in the district of the district court to which application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998).

Section 1782 does not require a district court "to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). In *Intel*, the Supreme Court identified discretionary factors that courts should consider when determining whether an application brought under § 1782(a) should be granted, including "the character of the proceedings underway abroad." *Id.* at 264-65.

The Court should exercise its discretion to quash the Stati Parties' subpoenas to BNY Mellon for three reasons. First, the Second Circuit has expressly held that the foreign proceeding must be "adjudicative in nature." *Euromepa*, 154 F.3d at 27. Here, the Stati Parties seek discovery for use in anticipated attachment and execution proceedings in the United Kingdom, which do not meet that criteria. Second, the Court did not authorize the Stati Parties to serve the new subpoena.

9

Third, the subpoenas should be quashed because the circumstances concerning enforcement of the SCC Award in the United Kingdom have changed materially since the Court's Order issued.

I. **THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE STATI PARTIES ARE NOT SEEKING DISCOVERY IN AID OF ADJUDICATIVE FOREIGN LEGAL PROCEEDINGS**

"Not all foreign matters are 'proceedings' within the meaning of section 1782." *In re MT "Baltic Soul" Produktentankschiffffhartgesellschaft Mgh & Co. Kg.*, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015). Section 1782 discovery is available in aid of proceedings that are "adjudicative in nature," *Euromepa*, 154 F.3d at 27, and is "inappropriate where the merits of a controversy already have been decided by a foreign tribunal." *In re MT "Baltic Soul,"* 2015 WL 5824505, at *2. District courts in the Second Circuit have thus specifically held that § 1782 cannot be used in aid of pre- and post-judgment attachment and execution proceedings because the discovery sought would not be "used" for purposes of adjudicating the merits of the case. *See, e.g., id.* (no foreign "proceeding" where the merits of the case had been determined by an English court and the petitioner sought § 1782 discovery in relation to post-judgment proceedings); *Jiangsu Steamship Co. Ltd. v. Success Superior Ltd.,* 2015 WL 3439220, at *4-7 (S.D.N.Y. Jan. 6, 2015) (pre- and post-judgment attachment proceedings are not within the scope of § 1782 because they are not adjudicative in nature).

Here, the Stati Parties are expressly seeking discovery from BNY Mellon to aid with anticipated proceedings in the United Kingdom concerning the "existence, ownership and character of ROK assets in the United Kingdom" and the "execut[ion] upon such assets." Pet. ¶ 14(b); *see also id.* ¶ 4 ("This petition seeks discovery concerning the ROK's assets in the United Kingdom, as such information will assist Petitioners in executing the Enforcement Order."); ¶ 17 ("The Court's grant of judicial assistance would permit Petitioners to appropriately target their enforcement efforts in the United Kingdom … ."). This does not constitute discovery relevant to

10

the merits of the London Enforcement Proceeding, or any other proceeding. *Cf. Euromepa*, 154 F.3d at 28 ("The merits of the dispute between Emersian and Euromepa have already been adjudicated and will not be considered in the French Bankruptcy Proceeding … Thus, in the French bankruptcy proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced[.]"). Because the Stati Parties are seeking discovery in connection with post-judgment attachment and enforcement proceedings to execute on the SCC Award, rather than the ***merits*** of any foreign legal proceedings, the requested discovery is not within the scope of § 1782, and all of the subpoenas to BNY Mellon (the two subpoenas issued in 2015 and the new subpoena issued in 2017) should be quashed, and the Court's December 30, 2014 Order (ECF 5) should be vacated.

## II.    THE 2017 SUBPOENA SHOULD BE QUASHED BECAUSE THE COURT DID NOT AUTHORIZE ITS ISSUANCE

The Order did not provide the Stati Parties with unlimited authority to serve discovery on BNY Mellon. Instead, the Order expressly set forth the scope of the Stati Parties' authorization to take discovery: "Petitioners are hereby authorized to serve this order, all papers submitted herewith, and ***the subpoenas annexed to the Petition as Appendix A upon Bank of New York Mellon***." ECF 5 (emphasis added). The subpoenas that were annexed to the Petition only sought documents and information for use in anticipated attachment and enforcement proceedings in the United Kingdom, and thus were targeted to Kazakhstan's assets in that jurisdiction. *See, e.g.*, Pet. App. A, Document Request Nos. 2 ("All documents evidencing or concerning any and all accounts maintained by BNY Mellon at any office or branch that is subject to the territorial jurisdiction of the Courts of the United Kingdom[.]"), Document Request No. 3 ("All documents evidencing or concerning any and all accounts maintained by BNY Mellon at any office or branch that is subject to the territorial jurisdiction of the Courts of the United Kingdom[.]"); Document Request No. 4 ("All documents and communications concerning or related to any asset of the ROK that is subject

11

to the territorial jurisdiction of the Courts of the United Kingdom[.]"); Document Request No. 5 ("All documents and communications concerning or related to any debt owed to the ROK by any person or entity that is subject to the territorial jurisdiction of the Courts of the United Kingdom.").

The Court's Order did not authorize the Stati Parties to serve a new subpoena, more than two and half years after the Order issued, regarding Kazakhstan's assets and transactions across any and all jurisdictions.  The 2017 subpoena – which broadly seeks "[a]ll documents evidencing or concerning electronic transfers of funds to or from the ROK" — thus is outside of the scope of the authority conferred by the Order and accordingly should be quashed on this basis alone.

### III.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE CIRCUMSTANCES CONCERNING ENFORCEMENT OF THE AWARD IN THE UNITED KINGDOM HAVE CHANGED MATERIALLY SINCE THE COURT'S ORDER ISSUED

The circumstances regarding enforcement of the SCC Award in the United Kingdom have materially changed in the two and half years since the Court's Order issued.  At the time the Court authorized the Stati Parties to serve discovery on BNY Mellon in December 2014, the Stati Parties had obtained an *ex parte* order enforcing the SCC Award in the United Kingdom in the same manner as a judgment — the Enforcement Order.  Kirtland Decl. ¶ 4; *see also* Pet. ¶¶ 1-4.  The Stati Parties thus obtained the Order on the basis that attachment and execution proceedings in the United Kingdom were forthcoming.  *See* Pet. ¶ 14(b).

Since that time, the Stati Parties have served Kazakhstan with the Enforcement Order; Kazakhstan has filed an application to annul and/or set aside permission to enforce the SCC Award; and, Kazakhstan has presented its defenses to enforcement under the New York Convention.  Kirtland Decl. ¶¶ 3-4; *see also* Pet. ¶ 6.  Further, the London Court has held that Kazakhstan demonstrated a *prima facie* case that the Stati Parties obtained the SCC Award by fraud, and that the interest of justice requires that Kazakhstan's fraud allegations be "examined at

12

trial and decided on the merits." Kirtland Decl. Ex. 1, ¶¶ 37, 92-93. That trial is set to commence circa October 2018. Kirtland Decl. ¶ 9.

Whether the SCC Award is ultimately confirmed and subject to enforcement in the United Kingdom is now dependent on the upcoming trial concerning Kazakhstan's fraud defense. Given the uncertainty concerning the enforcement of the SCC Award in the United Kingdom — the only reason that the Stati Parties' Petition sought discovery from BNY Mellon in the first place — the subpoenas to BNY Mellon should be quashed.

## CONCLUSION

For the reasons stated above, Kazakhstan's Motion to Intervene should be granted; Kazakhstan's Motion to Quash should be granted; all subpoenas of the subpoenas for documents and deposition testimony that were served by the Stati Parties on BNY Mellon should be quashed; and, the Court's December 30, 2014 Order (ECF 5) should be vacated.

DATED:  October 23, 2017					Respectfully submitted,

/s/ *Felice B. Galant*
_____
Felice B. Galant

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Tel:  (212) 318-3000
Fax: (212) 318-3400
felice.galant@nortonrosefulbright.com

OF COUNSEL:

Matthew H. Kirtland (pending *pro hac vice* motion)
NORTON ROSE FULBRIGHT US LLP
799 9 Street NW, Suite 1000
Washington, D.C. 20001
Tel.:  (202) 662-0200
Fax:  (212) 662-4643
matthew.kirtland@nortonrosefulbright.com

*Attorneys for Respondent Republic of Kazakhstan*

14